Hillsborough, } No. 4091.
Feb. 5, 1952. }

GLENNIE MAE POWELL

*by her mother and next friend,* THELMA BOUTWELL

*v.*

PERCY F. POWELL, JR.

*Leonard & Leonard* and *George Terrien* (*Mr. Thomas J. Leonard, Jr.* orally), for the libelant.

*John B. Ford* (by brief and orally), for the libelee.

KENISON, J. The libelee contends that the amendment of the divorce libel to a petition for annulment is precluded on the grounds of estoppel, election of remedies and by confirmation of the marriage under R. L., c. 338, s. 5. The statute reads as follows: "OF CONSENT. The age of consent shall be in the male, twenty years and in the female, eighteen years. Any marriage contracted by a person below the age of consent, except as hereinafter provided, may in the discretion of the superior court be annulled at the suit of the party who at the time of contracting such marriage was below the age of consent, or at the suit of his or her parent or guardian, unless such party after arriving at such age shall have confirmed the marriage."

While the record does not clearly indicate whether the parties were living apart at the time the temporary order for support was made (R. L., c. 339, ss. 14, 33; *Trow* v. *Trow,* 95 N. H. 529), it does not affirmatively appear that the parties cohabited after the reduction in the temporary support order. In order for a party under age to confirm the marriage within the meaning of the statute, there must be some unequivocal and voluntary act, statement or course of conduct after reaching the age of consent. Anno. 159 A. L. R. 104. Voluntary cohabitation of the parties as husband and wife after attaining marriageable age is the commonest illustration of such an unequivocal and voluntary course of conduct. *Hampstead* v. *Plaistow,* 49 N. H. 84, 98, 99. Confirmation of the marriage generally presupposes its continued existence and the filing of divorce proceedings is not indicative of an intention to continue the existence of the marriage relation. The essence of the marriage contract is that the parties should engage to live with each other for life, and to discharge the duties imposed by law upon the relationship of husband and wife. The purported marriage between these parties was invalid for lack of effective consent on the part of the libelant to be bound by such a contract. This lack would have been supplied by voluntary cohabitation on her part after majority. It was not supplied merely by her acceptance of a bare modicum of temporary support under the circumstances of this case. This was not such a manifestation of consent to the essential

terms of the contract as to constitute "confirmation" of it within the meaning of the statute.

The doctrine of election of remedies has recently been limited in its application in this state. *Ricker* v. *Mathews*, 94 N. H. 313, 317, 318. Under the *Ricker* case the retention of temporary support pursuant to the pending divorce libel would not be an election of remedies precluding the substitution of a petition for annulment. Decisions from the lower courts in New York relied upon by the libelee holding that prior divorce proceedings preclude annulment are not controlling here; and it is doubtful if they represent the prevailing view in that state in view of the recent decision by the Court of Appeals in *Landsman* v. *Landsman*, 302 N. Y. 45; 1950 Annual Survey of American Law, 750, 751. There has been no final decree or hearing on the merits of either the divorce libel or the amendment seeking to annul the marriage. The temporary order for support was properly made under the divorce libel (R. L., c. 339, s. 14), and the libelee could not rightfully cease payments without judicial relief from the order. *Eaton* v. *Eaton*, 90 N. H. 4, 8; *Fowler* v. *Fowler*, 97 N. H. 216.

Those jurisdictions which raise an estoppel to an annulment proceeding by the previous filing of a divorce libel proceed mainly on the ground that the plaintiff must come into equity with clean hands. While this maxim of equity has utility, its application to cases of this kind "will result in little, if any, social gain." Anno. 4 A. L. R. (2d) 542, 544. We have previously held that the clean hands doctrine is not conclusive in annulment proceedings (*Skavina* v. *Skavina*, 93 N. H. 335), and have recently indicated that it does not necessarily prevent a party from bringing annulment proceedings. *Fowler* v. *Fowler*, 96 N. H. 494, 497. One of the modern authorities on the law of equity states: "It was an evil day when the first American judge to speak of clean hands had the bright idea of injecting the maxim into the very place where it would work its greatest mischief. In dealing with marriage, judges have an especially strong duty to look at the total situation, and not let the result turn on the ethical behavior of a single individual. Marriage does not involve just one person. Indeed, most of its difficulties as well as its delights come from the basic fact that it takes two to make a marriage. . . . At the same time, domestic problems ought not to be subjected to inflexible rules." Chafee, Coming Into Equity with Clean Hands. 47 Mich. L. Rev. 1065, 1083, 1087.

Furthermore, since annulment of a voidable marriage in this

304

state does not affect the legitimacy of the children born of such marriage, there is no public policy which requires the application of estoppel, election of remedies or the equitable maxim of clean hands. *Sirois* v. *Sirois*, 94 N. H. 215, 216, 217.

*Exception overruled.*

All concurred.